In the Matter of the Application of CARRIE E. POUNDS and Another,
Petitioners, v. WILLIAM E. WALSH, Chairman, and Others, Con-
stituting the Board of Standards and Appeals, and Another,
Defendants.

Supreme Court, Kings County, May 24, 1927.

**Municipal corporations — zoning ordinances — board of standards and
appeals of city of New York granted owner of plot in detached residence
zone, permission to build multi-family apartment house which would
not meet requirements established under building zone resolution —
determination reversed in absence of evidence showing defendant
would be subjected to practical difficulties or unnecessary hardships
if forced to build as required — board has no jurisdiction to amend
building zone resolution.**

The determination of the board of standards and appeals of the city of New
York, granting the application of the defendant so as to permit the erection,
upon a corner in a detached residence section of the city of Brooklyn, of a
multi-family apartment house, which would not meet the requirements estab-
lished for said section, designated in the building zone resolution as an E area
district, must be reversed, in the absence of evidence showing that the defendant
would be subjected to practical difficulties or unnecessary hardships if it erected
a building allowed by E district regulations; in fact, the determination of the
board was an attempt to amend the building zone resolution, which it is
powerless to do.

CERTIORARI to review determination of board of standards and
appeals involving zoning ordinance.

*Leonard M. Wallstein,* for the petitioners.

*George P. Nicholson, Corporation Counsel.*

*Edward A. McShane,* for J. P. C. Realty Corporation.

DRUHAN, J.  This is a review by certiorari· of a determination
of the board of standards and appeals which reversed an order
of the tenement house commissioner and granted the appeal of
the defendant J. P. C. Realty Corporation, the owner of the north-
east corner of East Eighteenth street and Cortelyou road, so as
to permit the erection upon such corner of an apartment house
which would not meet the requirements established for E area
districts, but which would be permissible only in a C area district,
where there are no such requirements.  The property in question
is located in a district which lies between Beverly road on the
north and Cortelyou road on the south.  Its westerly boundary is
midway between Coney Island avenue and Stratford road, and its
easterly boundary is 100 feet east of East Nineteenth street.
Immediately adjoining this district on the north is an F district,

which includes a beautiful residential section of Flatbush known as Prospect Park South. The locality in which the petitioners reside is likewise a beautiful section and contains many residences which are similar in type to those erected in Prospect Park South. The defendants claim that the determination of the board of standards and appeals is correct, and in support of their claim they insist that proof of practical difficulties and unnecessary hardships was submitted to the board and that such proof justified the board in permitting a departure from the Building Zone Resolution. An examination of the record, which is annexed to the return, will show, however, that no such proof was submitted to the board upon the hearing. It seems clear to me that the board attempted to amend the Zoning Resolution rather than permit a variation of its provisions in a specific case, and this is shown by the answer and return. In referring to the Building Zone Resolution in the answer the defendants say: " This method of zoning as applied to these two and one-half blocks is unsound, uncomprehensive and unbalanced and creates a distinctly unnecessary hardship upon the owner herein, and such zoning appears from the record to have been the result of the efforts of one of the objectors in this proceeding, who, in 1916, when this property was zoned by the Board of Estimate and Apportionment, was a member of said board and the owner of said property between Beverly Road and Cortelyou Road since June, 1898."

As a matter of fact no testimony seems to have been taken at the hearing conducted by the board of standards and appeals which would indicate the practical difficulties or unnecessary hardships of which the owner complains. On the contrary, the record of the so-called hearing reads more like the transcript of a debate in which the chairman of the board and the representative of the property owner held the affirmative on the proposition that the district involved in the proceeding was incorrectly zoned in the first instance by the board of estimate and apportionment. For instance, Mr. Doyle, who represented the property owner in contending that the Zoning Resolution is not correct, said: " The Board of Estimate and Apportionment, or those who have to do with the layout of area districts, have created an unnatural condition in this street. It is unnatural if the area district counts for anything  *  *  *  so that the object of taking these two blocks out, penalizing the owners of these two blocks, to my mind is not sound  *  *  *. And so this zoning is a selfish matter and the Board of Estimate did create a condition that is discriminating."

And on the same subject the chairman of the board said: " I still

repeat I think it is not constructive zoning to say that you may put one in on one side and on the other side you cannot do that."

It will thus be seen that the board of standards and appeals was not concerned with granting relief in a " specific case," but being in disagreement with the action of the board of estimate and apportionment, it attempted to amend the Building Zone Resolution. It has, however, no such power, and, as the court said in *Matter of Stevens* v. *Clarke* (216 App. Div. 351, 354): " If their action in the matter was lawful, there is nothing to prevent them from nullifying the entire Zoning Ordinance as a matter of favor to an applicant." Notwithstanding the statement that the locality was placed in a restricted zone as the result of the efforts of an objector in this proceeding when he was a member of the board of estimate and apportionment, the fact remains that the locality in question was highly restricted and devoted exclusively to residential purposes for many years before the Building Zone Resolution was adopted. In reply to the assertion that the action of the board of estimate and apportionment was unduly influenced by one of its members, Mr. Pounds, who was formerly president of the borough of Brooklyn and a member of the board of estimate and apportionment, said: " I purchased this property between Beverly Road and Cortelyou Road, I think, in June, 1898. We laid out this section and made it a high class restr. cted neighborhood. It was built up at the same time that Dean Alvord developed Prospect Park South. Mr. Alvord and myself collaborated on what has been the most complete private restrictions on property in our day. Later on I developed Ditmars Park. I built my home in 1898. In 1899 I moved in and lived there continuously ever since, lived there and brought up my family there. Several of those who went in at that time as pioneers (at that time it was very rough) are living there to-day. Now, a few of us original people sought to find a place where we could bring up our families under detached house conditions, with as much freedom and light and air as it was possible to obtain, and the restrictions were placed with that in mind. It was built up within a few years, and, as I say, several who went in originally with no idea of speculation, with no idea of profit     *     *     *."

At this point in the record Mr. Pounds was interrupted by the chairman of the board, but so much of his statement as is quoted is sufficient to show the character of the locality in which the board of standards and appeals authorized the erection of a multi-family house which would be built in accordance with specifications which the present building zone restrictions do not warrant. It is clear that the preservation of the E districts, where detached

private residences are maintained, is in the interest of the health, safety, morals and general welfare of the community. While public parks may furnish open spaces they are, nevertheless, a public expense. The zoning plan affords a method of preserving spaces which contribute by taxes to the public treasury instead of being a public expense. Such spaces where grass and flowers may grow, and where the buildings are well set back from the street are breathing spots which ought to be preserved. These open spaces are not necessarily the localities of the well to do. On the contrary, in many parts of Brooklyn such spaces contain the small homes of people of moderate means, and in order to encourage the development of such localities the Building Zone Resolution recognizes that every part of the city should not necessarily be given over to dense construction and consequent congested living conditions. Beverly Square, the district in which the property in question is located, is one of a series of E districts which extend southerly from Prospect Park to Coney Island. These E districts do not occupy more than one-quarter of the total area and they are interspersed by many D and C districts where denser construction is allowed. While some of these E districts were created upon the petition of the property owners after the original Building Zone Resolution was adopted, Beverly Square, however, as has been seen, is located in one of the original E districts and was quite entirely built up with detached private homes when the Zoning Resolution took effect. It is obvious that the edges of such districts will always be precarious, because of necessity they are bounded by either C or D districts; consequently, it will always be a temptation to a lot owner on the edge of an E district to desire to erect a multi-family building which will overlook the surrounding E district homes and grounds. If he can succeed he will obtain a better rental for his apartments than if he were to build in a C district. In these circumstances such a lot owner will endeavor to obtain a variance of the Zoning Resolution so as to permit denser construction. But because the edges of an E district are necessarily in contact with such conditions as a street surface railroad or a main thoroughfare, or an apartment house on the opposite side of the street, is not a practical difficulty or unnecessary hardship in the way of carrying out the strict letter of the provisions of the Zoning Resolution. The boundary lines of the E districts which were established by the legislative authority of the city should not be unreasonably or arbitrarily disturbed. These boundary lines must be somewhere, and when established they should be preserved unless it clearly appears that in a specific case a practical difficulty or an unnecessary hardship is presented.

The property owning corporation in the present case presented no facts, however, which indicate that it would be subjected to unnecessary hardship if it erected a building allowed by E district regulations. It can construct a private residence, it can erect a semi-detached house, it can erect an E district apartment house, but the claim of the property owner, which has been sustained by the opinion of the board, that it is more profitable to erect a C district apartment house in an E district does not constitute an unnecessary hardship. The motion to dismiss the certiorari will be denied and the determination of the board of standards and appeals will be reversed, with costs.